## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MICHAEL THIEDE,

    Plaintiff,

                v.

SHARPER IMPRESSIONS PAINTING CO.
and SHARPER IMPRESSIONS PAINTING
OF ATLANTA, LLC,

    Defendants.

Civil Action No.
1:22-cv-01838-SDG

### OPINION AND ORDER

This matter is before the Court on Defendants Sharper Impressions Painting Co. and Sharper Impressions Painting of Atlanta, LLC's motion for summary judgment [ECF 36] and Plaintiff Michael Thiede's motion to amend the complaint [ECF 39]. The Court, having carefully considered the parties' briefing and with the benefit of oral argument, **DENIES** both motions.

## I.    Factual Background

The undisputed material facts show the following. Defendants operate a residential painting business in the metro-Atlanta area.[1] Geoff Sharp is the owner (directly or indirectly) and senior executive officer of Defendants.[2] Thiede started working for Defendants in February 2014 and was responsible for sales and

---

[1]    ECF 36-2, ¶ 1.

[2]    *Id.* ¶¶ 2–3.

managing paint jobs, among other things.[3] His employment ended around December 2021.[4] It seems the parties have been suing each other ever since.[5]

Defendants use a third-party company called Pressworks to print and mail advertising flyers for their business.[6] While he was employed by Defendants, Thiede consented at least once to the use of his photograph in their advertising.[7] After his employment ended, flyers with Thiede's photograph were sent out by Pressworks.[8] While the parties dispute the exact number, at least 30,000—maybe more than 40,000—flyers were distributed.[9] Thiede did not consent to the use of his photograph in this manner.

The Court construes the following disputed facts in the light most favorable to Thiede. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1246 (11th Cir. 1999). Defendants claim that, after Thiede's employment ended, Sharp instructed Pressworks to destroy all materials with Thiede's photo.[10] Defendants attribute the distribution of flyers with this photo to

---

[3]    *Id.* ¶¶ 4–5.

[4]    *Id.* ¶ 4.

[5]    *Id.* ¶ 10.

[6]    *Id.* ¶¶ 6–8.

[7]    *Id.* ¶ 9.

[8]    *Id.* ¶ 12.

[9]    *Compare id.* ¶ 14 *with* ECF 38, ¶¶ 11–14.

[10]    ECF 36-2, ¶ 11.

an error by Pressworks that Defendants did not authorize.[11] Thiede, based on his experience working for Defendants, insists that more than 40,000 flyers would not have been sent out without authorization by Defendants.[12] He also relies on circumstantial evidence to support the contention that Defendants used his likeness on purpose: Thiede previously pursued claims against Defendants for allegedly using his image in their advertising without his permission while he was still an employee.[13] As part of the settlement of the parties' prior litigation, Defendants insisted he pay for the destruction of the flyers. If the flyers had been destroyed, Defendants would have needed to print new ones with his image to mail out in March 2022.[14] The reasonable inference, of course, is that Defendants did not destroy the flyers as they contend and mailed them out anyway.

The parties do not dispute that Defendants' sales were $677,107 in 2020; $905,956 in 2021; and $828,827 in 2022.[15] Thiede asserts—and Defendants do not

---

[11]   ECF 36-2, ¶ 12.

[12]   ECF 38, ¶¶ 12–13; ECF 41, at 27 (Thiede Dep. Tr. at 26:6–27:7).

[13]   ECF ¶ 18; *Sharper Impressions Painting Co. v. Thiede*, Case No. 2:21-cv-2245-ALM-CMV (S.D. Ohio 2021), Doc. 21, ¶¶ 133–165 (reflecting Thiede's counterclaim).

[14]   ECF 38, ¶ 20; ECF 41, at 36 (Thiede Dep. Tr. at 35:12–36:1).

[15]   ECF 36-2, ¶ 17.

dispute—that he increased business while he was employed by them.[16] Sharp acknowledged that Thiede generated about $1 million per year in gross revenue for Defendants.[17] Thiede does not believe that customers necessarily hired Defendants because of a belief that he still worked for Defendants based on the flyers; but Thiede does think that people associate his face with Defendants.[18]

## II.    Summary Judgment Motion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it can affect the outcome of the lawsuit under the relevant legal standards. *Anderson*, 477 U.S. at 248. As the movants, Defendants have the burden of demonstrating that there is no genuine issue of material fact reflected in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view the evidence in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

---

[16]    ECF 38, ¶¶ 15–16. Defendants did not respond to Thiede's statement of disputed material facts.

[17]    *Id.* ¶ 18.

[18]    ECF 36-2, ¶ 18; ECF 38, ¶ 15.

are jury functions," and cannot be made by the Court. *Id.*; *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

## A.    Appropriation of Likeness

Thiede's complaint asserts a cause of action for "wrongful appropriation of image."[19] To prove such an appropriation of likeness tort claim under Georgia law, a plaintiff must show that the defendant (1) appropriated his name or likeness, (2) without consent, (3) for the defendant's financial gain. *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 752 (2013); *Cabaniss v. Hipsley*, 114 Ga. App. 367, 377 (1966) (stating that an appropriation claim "consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness"). The interest being protected is a proprietary one—the plaintiff's exclusive ability to use his name and likeness as an aspect of his identity. *Bullard*, 292 Ga. at 752 (quoting *The Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135, 142 (1982)). The plaintiff need not be a celebrity—there is no requirement that his name or likeness have had any preexisting commercial value. *Id.*

Defendants assert that they are entitled to summary judgment on this claim because (1) their use of Thiede's image was unintentional and (2) Thiede cannot

---

[19]    ECF 1, at 4–5.

show damages.[20] Since each of these arguments depends on material facts that are in dispute, summary judgment is inappropriate.

### 1.    Intent

Defendants argue that Sharp "expressly instructed Pressworks to destroy all pictures and postcards" with Thiede's photograph and that they did not authorize Pressworks to use the photo.[21] Since use of the photo was unintentional, say Defendants, Thiede has no proof of an essential element of his claim.[22]

Defendants are correct that an appropriation of likeness claim requires proof that the defendant's use of the plaintiff's likeness was knowing or intentional. *Blakey v. Victory Equip. Sales, Inc.*, 259 Ga. App. 34, 38 (2002) (upholding a grant of summary judgment for the defendants where there was no record evidence that the defendants knowingly took the plaintiff's identity for their own purposes); *see also Tana v. Dantanna's*, 611 F.3d 767, 783 (11th Cir. 2010) ("Georgia case law plainly establishes that summary judgment is proper where a plaintiff fails to show an intentional or knowing appropriation of likeness."). But whether use of Thiede's photo was knowing or intentional depends entirely on disputed facts and credibility issues that the Court may not resolve at summary judgment. "The

---

[20]    *See generally* ECF 36.

[21]    ECF 36-1, at 4–5.

[22]    *Id.* at 15–16.

intention with which an act is done is peculiarly a question for the jury." *Johns v. Ridley*, 245 Ga. App. 710, 712 (2000), *rev'd on other grounds*, 274 Ga. 241 (2001), *vacated*, 252 Ga. App. 187 (2001). Intent can be established through circumstantial evidence and reasonable inferences, which are "for a factfinder's sifting." *Barber v. Perdue*, 194 Ga. App. 287, 290 (1989) (citing *Harte–Hanks Commc'n v. Connaughton*, 491 U.S. 657 (1989)); *see also id.* at 291.

Defendants' evidence of their purported lack of intent consists solely of Sharp's own deposition testimony about his instructions to Pressworks. Thiede disputes Sharp's assertion based on the reasonable inferences that can be drawn from the evidence.[23] *Barber v. Perdue*, 194 Ga. App. 287, 289 (1989) (quoting *Herbert v. Lando,* 441 U.S. 153, 160 (1979)) ("Proof of state of mind 'could be in the form of objective circumstances from which the ultimate fact could be inferred' as well as direct evidence from defendant."). First, based on Thiede's experience working for Defendants, the volume of flyers that were distributed was so significant that it would have needed approval from Defendants. Second, Defendants were aware Thiede wanted the flyers destroyed (and indeed had already sued them because of their use of the flyers), the parties discussed their destruction as part of the resolution of the parties' earlier litigation, but flyers with his image were sent out

---

[23]  ECF 38, ¶ 11.

anyway. Either Defendants printed more flyers with Thiede's image or did not destroy the existing ones as promised. Which side's story is true depends on the credibility of the person telling it. And that is for a jury to decide. *Barber*, 194 Ga. App. at 290 (citing *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968)) ("Defendant's own denial of actual malice is not conclusive in the presence of evidence to the contrary.").

Defendants argue that Thiede must do more than "establish a prima facie case" and deny a witness's credibility to defeat summary judgment.[24] The case they cite to support this proposition—*Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir. 1994)—dealt with a plaintiff's burden of production in a §1981 employment discrimination case after the employer put forth evidence of a legitimate, nondiscriminatory reason for its decision. The "prima facie case" requirement—drawn from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), as an evidentiary framework in employment cases—is inapplicable here. Moreover, the only evidence in this record supporting Defendants' intent depends on the credibility of Sharp. Thiede has not simply denied Sharp's credibility, he has pointed to evidence (Defendants' knowledge that the flyers should be destroyed and failure to do so) to support the attack on Sharp's credibility. *Howard* does not help

---

[24]   ECF 43, at 4.

Defendants. *Howard*, 32 F.3d at 526 ("[T]the identification of a defendant's inconsistent statements has evidentiary value; mere denial of credibility has none. . . . [A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable.").

### 2.    Damages

The Georgia Supreme Court has held that the measure of damages for an appropriation of likeness claim is "the value of the use of the appropriated publicity." *Bullard*, 292 Ga. at 754 (quoting *The Martin Luther King, Jr., Ctr.*, 250 Ga. at 142). *See also Whisper Wear, Inc. v. Morgan*, 277 Ga. App. 607, 610 (2006) ("The measure of damages under a misappropriation of likeness claim is the advertising value of the use of the material in the manner and for the time it was appropriated. In other words, the claim is for unjust enrichment of the defendant.") (citations omitted). That is, the plaintiff must "show that the use of [his] image actually added value to [the defendants'] advertising efforts that otherwise would not have existed without the use of [his] image." *Bullard*, 292 at 754–55. There can be no recovery for "injury to feelings, sensibilities or reputation." *The Martin Luther King, Jr., Ctr.*, 250 Ga. at 142. However, if the value of the advertising to the defendant cannot be shown, nominal damages may be recoverable. *McQueen v. Wilson*, 117 Ga. App. 488, 492, *rev'd on other grounds*, 224 Ga. 420 (1968). *Cf. Cotto L. Grp., LLC*

*v. Benevidez*, 362 Ga. App. 850, 857 (2022) (citing *Ga. Power Co. v. Womble*, 150 Ga. App. 28, 32 (1979); *Williams v. Harris*, 207 Ga. 576, 579 (1951)) ("Because the law infers some damage from the invasion of a property right, the right may be vindicated through an award of nominal damages even if the damage cannot be quantified or established by proof.") (cleaned up).

Defendants argue that Thiede's claim necessarily fails because he lacks evidence that the use of his image added value to their advertising and he cannot recover for his alleged emotional harm.[25] They point to Thiede's testimony that he did "not necessarily" believe customers who hired Defendants after receipt of the flyer did so believing that Thiede worked for Defendants.[26] According to Defendants, if no customers hired them because Thiede appeared in the flyers then his image did not add value to their advertising.

Although Defendants correctly describe the legal measure applied to damages, they ignore that, at summary judgment, they have the burden to show the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *Celotex*, 477 U.S. at 323–24. Defendants' reliance on Thiede's "not necessarily" testimony does not establish as a matter of law that his image had no value to Defendants' advertising. Customers need not have thought Thiede would

---

[25] ECF 36-1, at 12–14.

[26] *Id.* at 12.

personally come paint their homes because his picture was in the flyers. Thiede's image could have lured customers to Defendants because, for example, they recognized Thiede and found him to be familiar. Defendants have not explained why customers' beliefs about Thiede necessarily negate any value his image had to Defendants' advertising.

Defendants also attack Thiede's demand for $1 million in damages, asserting that this amount is more than the total revenue they generated in the year the flyers were used.[27] Thiede counters that Defendants' 2022 sales ($828,827) were due "at least in part" to the advertising that used his image.[28] He also points to the fact that Defendants' business increased by a third from 2020 to 2021 while he worked for them and that Sharp testified that Thiede generated about $1 million per year in gross revenue for Defendants.[29]

Although there was a drop in Defendants' revenues from 2021 to 2022, the flyers were distributed in March 2022. Neither side has pointed to evidence showing month-to-month changes in Defendants' revenues nor demonstrated what effects the flyers or other factors might have had on that revenue. As a result, Defendants have not established as a matter of law that Thiede's image added no

---

[27]  ECF 36-1, at 12–13.

[28]  ECF 37, at 3.

[29]  *Id.* at 3–4.

value to their advertising. Defendants' drop in revenue might have been larger without Thiede's image on the flyers. And Thiede has—barely—pointed to evidence that the image provided some value to Defendants. The problem is that Thiede has presented no evidence of what that value was. The summary judgment record certainly does not suggest that the value to Defendants of using Thiede's image was $1 million. But Thiede is not the party seeking summary judgment. At a minimum, he is entitled to seek nominal damages under Georgia law for the unauthorized use of his image even if he cannot prove the exact value his image had to Defendants. *McQueen*, 117 Ga. App. at 492.

### B.    Punitive Damages and Attorneys' Fees

Because Thiede may proceed to trial on his substantive appropriation of likeness claim, his claims for punitive damages and attorneys' fees may also proceed. As discussed above, Thiede has presented sufficient evidence of Defendants' ill intent and bad faith to go to a jury. O.C.G.A. § 13-6-11 ("[W]here the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); *id.* § 51-12-5.1(b) (authorizing punitive damages in tort actions "in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct,

malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences").

## III.   Motion for Leave to Amend

In his motion for leave to amend, Thiede seeks to add claims for negligent infliction of emotional distress and intentional infliction of emotional distress.[30] In support, he argues that FED. R. CIV. P. 15(a)(2) allows amendments to a pleading when "justice so requires."[31] He contends that "[e]vidence has come to light through the course of this matter" that would support the emotional distress claims. Thiede did not file the proposed amendment with his motion. What that evidence is, then, is unknown. Defendants oppose amendment, asserting that (1) it would be futile; (2) Thiede has not sufficiently identified facts that support his proposed causes of action; (3) Defendants would be prejudiced by an amendment; and (4) Thiede unduly delayed in seeking leave to amend.[32]

### A.   Applicable Legal Standards

After the time for amendment as a matter of course under FED. R. CIV. P. 15(a)(1) has run, a party may amend "only with the opposing party's written consent or the court's leave." *Id.* R. 15(a)(2). While such leave should be freely

---

[30]   ECF 39.

[31]   *Id.* at 2.

[32]   ECF 42.

given, *id.*, the Court need not do so when there has been undue delay, the amendment would be futile, or the amendment would prejudice the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). Moreover, when a party seeks leave to amend after a court-set deadline, he must first show good cause for the belated amendment. FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

**B.  Discussion**

The joint preliminary report and discovery plan filed by Thiede on March 14, 2023, makes clear that "[a]mendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law."[33] Thus, because he seeks to amend his pleading more than 30 days after filing the joint preliminary report, Thiede must demonstrate good cause under Rule 16 *and* the absence of undue delay under Rule 15. He has not.

---

[33]  ECF 8, at 4–5 (emphasis in original); *see also* LR 7.1(A)(2), NDGa (requiring most motions to be filed within 30 days after the start of discovery).

A bit of background is helpful. Thiede initiated this case in May 2022.[34] Discovery started on December 5, 2022,[35] and the case was assigned to a four-month discovery track.[36] The Court extended discovery three times, with the period finally closing on November 30, 2023.[37] On January 31, 2024, however, the parties jointly moved to reopen discovery to take additional depositions.[38] After a conference with counsel, the Court granted the motion and reopened discovery from February 15, 2024 through April 15, 2024.[39] Both Thiede and Sharpe were deposed on April 11.[40] Defendants moved for summary judgment on June 17.[41]

During oral argument, Thiede's counsel said he did not have evidence to support the emotional distress claims until Thiede's April 11 deposition and that he filed the motion to amend as soon as he was able to after that point. Even assuming that's true—which is questionable—the lack of diligence before then is

---

[34]  ECF 1.

[35]  Defendants filed their answer on November 4, 2022. Under the Local Rules, discovery started 30 days later. LR 26.2(A), NDGa ("The discovery period shall commence thirty days after the appearance of the first defendant by answer to the complaint.").

[36]  ECF 1-1, at 2.

[37]  ECF 19; July 10, 2023 D.E.; Oct. 3, 2023 D.E.

[38]  ECF 28.

[39]  ECF 30.

[40]  ECFs 40, 41.

[41]  ECF 36.

sufficient to negate the existence of good cause. *Quinn v. Deutsche Bank Nat'l Tr. Co.*, 625 F. App'x 937, 940 (11th Cir. 2015) ("A lack of diligence in pursuing a claim is sufficient to show a lack of good cause."). Thiede did not move for leave to amend until the day he responded to Defendants' motion for summary judgment—July 6, 2024.[42] This was nineteen months after discovery opened, seven months after the original close of discovery, nearly three months after the close of the *reopened* discovery period, and three weeks after Defendants filed their dispositive motion. This lack of diligence alone ends the good cause inquiry. *Sosa*, 133 F.3d at 1418 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) ("[I]t is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions.").

Further, that Thiede did not seek leave to amend until long after the close of discovery, in response to Defendants' dispositive motion, demonstrates the prejudice Defendants would face if the Court permitted the amendment. *See Lowe's*, 313 F.3d at 1314–15 (citations omitted) ("[D]espite numerous scheduling orders and joint stipulations regarding deadlines, Lowe's did not file its motion

---

[42]   ECF 37 (Pl.'s Br. in Opp'n to Mot. Summ. J.); ECF 39 (Pl.'s Mot. to Amend).

for leave to amend . . . until well after all such deadlines had expired and not until over two months following the filing of Olin's motion for summary judgment. . . . It is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment."). Defendants have not had the opportunity to take discovery related to the emotional distress claims or their defenses to them. To avoid this prejudice to Defendants, the Court would have to reopen discovery. Again. The federal rules do not require such indulgence.

## IV.  Conclusion

Defendants' motion for summary judgment [ECF 36] is **DENIED**. Plaintiff's motion to amend complaint [ECF 39] is **DENIED**.

The parties are **ORDERED** to file the consolidated proposed pretrial order no later than **April 28, 2025**. The parties are further **ORDERED**, no later than **April 28, 2025**, to each file a Notice of Leave of Absence, if any, for conflicting dates through the remainder of the calendar year. The trial and pretrial conference will be scheduled thereafter without further notice.

**SO ORDERED** this 31st day of March, 2025.

Steven D. Grimberg
United States District Judge